BOWEN v. BOWEN.

DIVORCE—CRUELTY, EXTREME—NEGLECT.

> Cruelty, warranting a divorce on the statutory ground of extreme cruelty, was not established by evidence that complainant's husband, who was employed by a railroad company as a target man at very long hours during the day, rarely conversed with the wife and preferred to read or retire in the evening instead of taking his wife to places of entertainment, or to make calls, and that he consumed considerable quantities of intoxicating liquors and that, being crippled, he supported complainant. in a deficient manner.

Appeal from Kalamazoo; Knappen, J. Submitted January 15 1914. (Docket No. 82.) Decided March 27, 1914.

Bill by Lillie Belle Bowen against George M. Bowen for divorce. From a decree for defendant, complainant appeals. Affirmed.

D. O. French, for complainant.

MOORE, J. The complainant and defendant were married at the city of Kalamazoo, on the 19th day of January, 1901. The complainant was 37 years of age, and had been previously married. Several years before her marriage to defendant she obtained a divorce from her first husband. The defendant was of the age of 47 years, and had not been previously married. No children were born to the couple.

The parties lived together until the latter part of April, 1912, when the complainant left the defendant, and applied for a divorce on two grounds, viz., non-support and extreme cruelty, and asked for relief as to the title to certain real estate. The defendant filed his answer, denying the charges of complainant and

insisting that she had clandestinely associated with other men. He did not ask for any affirmative relief. The case was tried in open court, and a decree entered dismissing the bill, and complainant has appealed.

The trial judge filed a written opinion, from which we quote:

"The complainant in her bill of complaint alleges, as a ground for divorce from her husband, failure to support and extreme cruelty, and asks to have the interests of both parties determined by the court in a certain house and lot on Seminary street, to which they hold the title as tenants by the entireties, as husband and wife. The defendant is a target man on Harrison street at the Michigan Central crossing, and has worked for the company for a great many years and was crippled many years since while in the company's employment, so that his left hand has become comparatively useless, so far as ordinary manual labor is concerned. That the defendant receives an income of $35 a month, and works from early in the morning until late in the evening. He was engaged in the same employment when the marriage took place between complainant and defendant, so that the complainant knew of his circumstances and income and ability to provide. The complainant charges extreme cruelty, namely, for the reason that he has not taken her out in society or to entertainments, or visited with her at any place except at their own home. Such a charge as this might well be regarded as cruelty under some circumstances; but under the testimony produced in this case it would seem that the defendant did not have any time to do differently. That every day in the week, including Sundays, he was busily employed. It would also seem that he could not provide a very luxurious support on a salary of $35 a month. Both parties claim that they furnished a portion of the funds that went into the purchase and rebuilding of the home on Seminary street.

"The first question in the case is as to whether or not the complainant has made out a case for a divorce. I do not believe that, under the law of this State, the defendant could be charged with a wanton and wilful failure to support, and with gross and extreme cruelty

under the facts as alleged and proven in this case. Therefore the second question becomes unnecessary to decide. They still hold as tenants by the entireties and the court cannot, in the absence of a decree of divorce, determine their respective interests therein."

The case in some respects is a peculiar one. The complainant is a hard-working, industrious woman, a good housekeeper, and ambitious to get along. She worked out by the day without the knowledge or desire of her husband. She was able to do this because he went to work early, taking his midday luncheon with him, and did not return from his work until late. Complainant admits that defendant paid the grocery bills, meat bills, and coal bills all the time they lived together, but denies he contributed anything further to her support. She also alleged that he wasted a good deal of money for Duffy's malt whisky and tobacco and cigars; that he bought the whisky by the quart and consumed more than was good for him. She admits that he brought the whisky home and did his drinking there. Defendant insists that he contributed his full share toward the support of the family, and that he drank the whisky in moderation at his home because he thought it was good for him, as his work exposed him to all sorts of weather from early in the morning until late at night. A striking peculiarity of the case is that defendant never took with him to his work any intoxicating liquors, and it is not claimed he consumed any except at home, nor is it shown that he drank in such quantities that it interfered with his work. It is not shown that the parties ever quarreled with each other, unless one occasion may be regarded as an exception, and as to that occasion the facts are in dispute. On the day when complainant left defendant she prepared his breakfast for him, and made no suggestion to him that he would not find her at home when he returned from his work. The record discloses beyond any question that defend-

ant was a hard-working person, who had a hand badly lacerated many years ago while coupling cars, and for 19 years had been gate tender at railroad crossings, keeping very long hours, working daily, though the hours were not so long on Sunday.

A careful reading of the record satisfies us that complainant was disgusted with defendant because after he came from his work he preferred, after doing work in and about the yard, to read or go to bed, instead of going with her for walks or calls or to places of amusement. The humdrum of their lives palled upon her.

We quote some of the averments of the bill of complaint:

"*(e)* She further shows that he is no companion for her, or anyone else; that he never talks or has anything to say, and she cannot longer endure it to be tied down with a load on her neck; that he is morose and sullen, and sometimes even jealous, and generally very disagreeable.

"*(f)* Your oratrix shows that she did many times talk with him about his unkind treatment of her, and about her monotonous life, and has for years tried to arouse him from his dumb and sleepy condition, but she has been unable to arouse him, and she can no longer endure it.

"*(g)* She shows that for years she has lived a wretched life, and her home has been a most unhappy one, and she can no longer endure it, nor can she longer tolerate the said defendant."

We have no doubt the life of complainant has, from her point of view, become a very uncomfortable one, but she has failed to show such conduct on the part of defendant as would justify the court in granting a divorce.

The decree is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.